The case that we're set for argument today is ICTSI Oregon, Inc. v. ILWU and Local 8. Counsel, you may begin when you're ready and let me know if you want to reserve a bit of time for rebuttal. Thank you, Your Honor. Good afternoon. Dan Jackson of Kecker & Van Nest and Peters for the LWU. And I would like to reserve at least five minutes for rebuttal. All right, I'll try to help you out, but keep your eye on the clock as well. I will, thank you, Your Honor. This appeal is about whether an initial secondary boycott gives an otherwise primary employer a blank check to claim damages for literally everything afterward. That includes its own mistreatment of its workers, their protests, and years of decline due to unrelated economic factors. Such unlimited liability would subvert our national labor policy. This court has jurisdiction to address these issues under 1292B. This case is like cinematronics, where the court reviewed an issue that first surfaced in an earlier order. It's also like the D.C. Circuit Philip Morris has discussed in our second brief on permission to appeal. This case- Counsel, I'm rather concerned about this very issue, the jurisdictional issue, because it raises interpretation questions of 1292B. I know where the parties stand on the Mead issue, because I've read the 28J letters, but you haven't responded to ICSI's concession on the secondary employer question. What is your position on that issue? Do you agree that we lack jurisdiction, at least as to that question? No, Your Honor. Thank you. The second question on appeal is also a controlling and substantial legal question. The Supreme Court's phrase about entanglement in the vortex of disputes illustrates Taft-Hartley's narrow scope. And the legal question is fundamentally the same as the one this court recently decided en banc in Oakland under 1292B, except here it's Taft-Hartley instead of the Fair Housing Act. Oakland held that unless the statute at issue has an unusually broad scope, proximate causation stops at the first step. That means the direct consequences of what Congress specifically prohibited. And it means the plaintiff's theory of harm must exclude other factors. Taft-Hartley is no exception. The Supreme Court has repeatedly held that damages must be strictly confined to the direct consequences of a secondary boycott. Courts have no power to award damages proximately caused by lawful primary activities or other factors. ICTSI's experts admitted  They admitted they didn't stop at the first step. Isn't that issue resolved? Isn't that a fact question in any event? Is there a legal question here as to which there is substantial disagreement among others? Yes, Your Honor. The legal question is that the page on page 53, especially of the record. Check that I've got that page right. The district court adopted the NLRB's standard that because the ICTSI was responding to the secondary boycott from June, 2010, that things that happened afterwards were also secondary. That's contrary to the principle announced, and that's a question of law. Is indirect causation appropriate? I mean, I think it's answered by this court's recent decision in the Oakland case, but we haven't yet had a case applying that to Taft-Hartley. So it's a controlling legal question of first impression. It's very substantial. It's very material to this case, and it's very important to be resolved. If the, you know, I think it's also worth considering the Fulton- Just a minute, counsel. I think Judge Clifton wants to say something, but Judge Clifton, it looks like you're on mute. You're on mute, Judge Clifton. Let's freeze the clock so we don't take up your time, Mr. Jackson, while we figure out the technological issue on Judge Clifton's end. Thank you, Your Honor. Oh, wait, that worked. Okay, I may have been, something popped up inviting me to hit a button to unmute, and I did, but on what, I mean, the microphone shows it's being on. So I started to talk and didn't realize until a while that nobody was hearing me. Maybe you didn't miss much, but anyway. But we'll start the clock again then. Yes, Your Honor. What I was trying to interrupt you with is that I hear what you're saying, but I'm still puzzled as to what the question of law is, particularly with regard to the second issue before us. Sure, there are pieces of law involved, but what's the controlling question of law that really resolves the case? I haven't found it. The question of law, to phrase it, we use the sort of memorable phrase from the United States Supreme Court about entanglement in the dispute to illustrate the narrow scope of the Taft-Hartley Act. But the legal question more specifically is, is the Taft-Hartley Act the kind of unusual statute that allows a plaintiff to go beyond the first step of proximate causation? I mean, what happened here is that I see- I don't see how that's a question of law. I mean, certainly it affects the case. If your position is adopted, it would make any plaintiff's burden much more difficult. But how does that control this case so that we somehow jump to a bottom-line answer? It simply, arguably, tilts the balance a little bit and shifts the burden and means there should be a new trial based on this new articulated burden. How is that a controlling question of law? It's a controlling question of law, Your Honor, because the district court found, as a matter of law, in the certified order, that this type of indirect causation was sufficient. We demonstrated that there were- Well, I wouldn't call it indirect causation. The causation is there. You're trying to argue there were other factors that caused the injury as well, and somehow it needs to be parceled out. And that's not an uncommon situation. Indeed, I think your papers acknowledge that that's the ordinary regime in a tort world. You're trying to argue that in this world, it should be treated differently. But that still doesn't tell me there's a controlling question of law. There is a controlling question of law, Your Honor, because the question is, does the employer's response to a secondary boycott and then protests to that response, are those all swept into the first step of approximate causation analysis? And so that's a question of law. It's controlling here, because if they're not, then ICTSI didn't carry its burden of proof that the district court should have granted judgment as a matter of law, because the theory behind which the jury was found that nothing that happened in five years of activity at Terminal 6 of the Port of Portland was that everything that happened was illegal, was based on this- Can you just, because I apologize for interrupting. I just didn't want you to spend too much of your time on this question, because even if you're right, that there is a question of law that can be phrased in there to get to the bottom line of judgment as a matter of law really would require a panel to engage so heavily in the facts of the case that maybe that counsels against exercising our discretion, assuming the issues are properly certified, exercising discretion to hear it by way of involuntary appeal. But I would like you to actually focus and help me out on this portion of the district court certification order that I'm just not sure I understand. The district court said as to the first certified question that even if ILW's interpretation of need is correct, then the jury's liability determination may not survive review. And so I suppose what the district court's trying to say is that, look, the interpretation of need is really, even though it was in a separate order, it's really key to the district court's analysis and this will materially advance the litigation because it affects liability. But I'm not sure that I understand how it affects liability rather than just solely damages on which the district court already said that it was going to grant a new trial. Thank you, Your Honor. It affects liability very much because of the district court's misunderstanding of proximate causation, the jury was told and allowed to be told that everything that happened after the initial secondary dispute was also secondary. I mean, the ICTSI's expert used the example of if someone is punching you and you try to, and you punch back, that is a secondary, that's part of the secondary dispute because you're reacting to the secondary boycott. But I would submit that that's, as a question of laws, is that even, is that a permissible analysis? Is that, was the jury allowed to decide liability on that kind of theory? The answer is no under Oakland. And I mean, it was no under Oakland. That really doesn't respond, I don't think, to the question Judge Wendt is trying to pose, which is that may go to the amount of injury or the amount of damages, but it doesn't go to the first part, which is, is there liability? If you're arguing that the period of secondary employer treatment should have been cut off, and at some point it translate to primary that shouldn't be covered, that doesn't really solve the problem that justifies a complete verdict in your client's favor, because there was a period of time, and the jury appears to have found that there was a period of time when the plaintiff was a secondary, and as a result, entitled to lay claim to damages for the injury it suffered. Two answers to that. First is it does allow for judgment as a matter of law under the city of Vernon, in many cases, saying where if there's a failure to distinguish the amount of damages caused by unlawful activity from other factors, then there is a complete failure of proof. That was what happened in the city of Vernon case we've cited. But alternatively- Move on to your other point. That was a good point for me. The other, thank you, your honor. The other point is that under, you know, our motion for, under rule 50, I mean, we call it a JMAL motion, but it's a motion under rule 50, was also for retrial of liability, not just damages, because the point was the jury misunderstood the distinction between secondary activity and primary activity because of this notion that everything that happened after even ICTSI's reaction, then the employee's protests against what ICTSI was doing, it was all secondary. Now we have a liability verdict that takes that theory, just says everything in five years, it was all illegal. And what we're, then we're looking at a damages case based on that premise. And it's very common, in fact, that if you look at the congressional record on 1292B on this court's case steering committee, this is very much the kind of situation that 1292B was intended to address, where you're going to have a damages case based on a flawed liability ruling that then is a waste of resources for everyone and leading to, as the district court certified, not just a potentially unnecessary second trial, but an unnecessary third one, if anything about the liability rulings was incorrect. And the, I mean, I think it's, we don't have to look deeply into the record to see what was wrong here. As I said, we're going past the first step, the indirect connection that the district court relied on and was, as I said, that ICTSI was responding to the secondary boycott. But even before Oakland, this court held in Fulton that an employer's response is, quote, too remote from the alleged violation. Protesting the employer's response is even more remote. And that's legal. The district court erred in holding otherwise in a certified order. Can you clarify for me, Mr. Jackson, specifically what jury instructions you're focusing on that you contend were erroneous? First of all, the ruling that I'm talking about right there is at page 51 of the record, where the court adopted this notion that indirect causation was sufficient. So we're not, although the jury instructions explain what happened here and explain where the district court began to go wrong, I want to be clear that what we're seeing here versus this. Okay, I'm looking at page 51. What is it you're referring to where the district court apparently decided that indirect causation was sufficient? That's a concept I didn't see. Right, so the district court is referring to the cites and quotes from the NLRB's decision, saying that IC, so it says, ICTSI responded to those actions. That's sort of in the middle of the page. Some of those actions are what administrative law judge Wedekind described as adjudicating the unfair labor practice charges as ICTSI, engaging in self-help efforts to prevent or document continued unlawful conduct. What ALJ Wedekind was saying was, he said in that same portion of the order cited there, it's undisputed that ICTSI's actions upset the workforce. But he said, the long short- I'm still waiting for what you told me the district court decided about indirect causation. So the judge is adopting the analysis from the ALJ, and the ALJ is saying, the ICTS acted quote, indirectly because of the reefer dispute. That's at the exact same page that the district court is citing. And then the notion was that that's part of, as it said, that's the industrial realities. I think Mead itself makes clear that- I think the reason why I asked you to identify the jury instructions, because I wanna go back and look again at how, even assuming you're right that the district court somehow misanalyzed a certain principle of law or theory, how did this affect the way that the case was presented to the jury such that liability would be affected? I know part of your briefing is on the burden being placed erroneously on the union in terms of the disaggregation of damages, which to me, again, is squarely a damages issue and not liability. And I wanna understand with this argument that you're making, whether there was an erroneous jury instruction that reflected whatever misunderstanding you're arguing the district court had that somehow infected the case such that we're now looking at liability instead of just damages. So that was the reason I was asking for you to help me to pinpoint to whatever jury instructions might've been in error. Yes, Your Honor. I mean, the jury instructions, I mean, we focused on the jury instructions on burden and the burden was very important here because the jury heard that it was the, that ICTSI had no duty to distinguish between the effects of unlawful conduct from other things, that that was, ILWU had to prove that. And then it was, and that led to, the district court allowed ICTSI's expert and others to say, he literally gave the jury a post hoc ergo proctor hoc theory here, where he said everything that happened, everything that happened after the secondary dispute was caused by the secondary dispute. In other words, everything was secondary. And that I believe led to the jury's conclusion, nothing else can really explain the jury's conclusion that there was no lawful labor protest in all of the time at issue. Let me just point you also to the, something from the record, I think is very important. Kelly Roby, one of ICTSI's- What prevented your presentation at trial from trying to argue as commonly happens in tort cases, for example, that look, the causation was mixed. There are these other factors and you've got to break them apart. And you assume the burden of trying to explain why the full amount that was awarded by the jury wasn't an appropriate calculation. That's all common in litigation. You had the opportunity to do that here. You seem to depending upon a legal theory that says a winner take all, but the case was tried based on these instructions that were worked out, as I understand it, prior to the trial itself. So it was presented by the parties understanding these were the ground rules the jury was going to be asked to follow. I'm kind of perplexed as to how this is a controlling question of law, one that leads to a judgment in favor of your client under Rule 50. Well, under the Supreme Court's Boyle case, which we cited, this court evaluates it not under, I mean, it may look to mistakes made in the jury instructions, but the standard is the law as this court decides it. And the question is whether, I mean, if there's undisputed evidence that shows that there were lawful protests, then the jury's conclusion that there was no lawful protests at any time can't stand under Rule 50. And let me just highlight the evidence that shows that that conclusion cannot stand. Kelly Roby, one of ICTSI's main witnesses, admitted that workers protested ICTSI firing entire Longshore gangs, including workers who had done nothing wrong. And he admitted that the protests were expressly based on Section 7 of the NLRA, which makes such protests lawful. He further admitted that ILWU didn't refer to the reefer work. Nobody told him they'd go back to work if ILWU got the reefer jobs. He couldn't remember even one conversation about that. Like a similar admission in the SEIU case, this court recently decided- Oh, we're taking you over your time. This is a classic attack on an answer. The special verdict forum, I think it's question four. This is a classic attack. The evidence doesn't support that verdict. How that becomes a controlling question of law is what seems to have mystified me and at least some of my colleagues. And you can say, well, the instructions were off the mark, but we get that argument all the time, not as an interlocutory appeal, but as a subsequent challenge to a jury verdict. So what elevates this to the status that permits it to proceed now when we don't have a final judgment? Your Honor, it's because of the focus on the jury instruction issue and the mistake about Meade. It did, in fact, as the district court said, it permeated all the decisions in its denial of the JML order. And if it's wrong, if the district court- Right, yeah, and I'm sorry for interrupting counsel, but we have taken you over your time. And I think that's why I asked for help. I'm struggling with the same thing I think my colleagues are, in that that was the district court's conclusion that it potentially infected liability, but we're, I think, struggling to see that. Our questioning took you over time and there was a little bit of technical, logical glitch as well. So why don't we stop you here from the other side and I'll put three minutes on the clock for rebuttal. Thank you, Your Honor. May it please the court, Michael Garone for ICTSI Oregon. While the issues raised by the ILW on appeal in this case are substantively without merit, this court has raised an important threshold issue about jurisdiction. And I would like to address that briefly first. We believe that both issues that were certified by the district court are not appropriately subject to this court's jurisdiction under 1292B. Regarding the first issue, it's uncontradicted that the burden of proof assignment of error was not included in the four corners of the certified order. And under this court's decision in Deutsche Bank and in the Supreme Court's decision in Yamaha, the issue must be fairly included within the certified order. That means that it has to be at a bare minimum, it has to appear in the face of the order. Now, in this case, the district court judge engaged in some post hoc reasoning in which he said that his decision in the certified order, which he admitted did not include anything about the jury instruction, was somehow affected by his pretrial rulings on the burden of proof. And it's our position that that's not sufficient to meet the fairly included requirement of Yamaha and Deutsche Bank. The four corners of the document should govern and not the trial judge's subjective statements about what was in his mind  A contrary ruling, your honors, would permit the trial court to in essence engineer appellate jurisdiction in opposition to the well-established principle that dates back to the Woodbury case in 1959, that section 1292B jurisdiction is to be sparingly applied and only in exceptional cases. This is not a case like the ones cited by ILWU like Cinematronics or Canella, where the certified order was clearly premised on the previous order and where reversal of the previous order would lead to reversal of the certified order. And in this case, and I think your honors, some of your questions reach this issue, the district court found substantial evidence in the record on every element of ICTSI's section 303 claim, liability, causation and damages. And that finding is not premised on the court's earlier decision regarding the burden of proof. Flipping the burden of proof does not lead to reversal of the trial court's rulings on the sufficiency of evidence. So we feel that the standards that this court has set in the Deutsche Bank case are not met here with regards to the first issue. The same can be said- Let me ask you about that. If it's except for a moment that the district court in concluding there was substantial evidence or sufficient evidence to sustain the verdict, it was responding to what it understood were the ground rules, the instructions that had been agreed upon, or at least the court shouldn't say agreed upon,  and it would be given to the jury. And the argument that I hear from the union is that, well, those are wrong because it's an all or nothing kind of thing. It's the obligation of the plaintiff here to disaggregate the multiple causation factors that could apply. And so you can't understand the jury verdict and you can't understand the district court's assessment of whether there was sufficient evidence to support that verdict without realizing that that's all premised upon the particular burden of proof that the district court applied. And hence, you can make a pretty good case that the result of the order that's now before us is not just influenced, but is dictated by, or could produce a different result if that earlier burden of proof determination had come out differently. Your Honor- And let me take one step further because as a practical matter, would you agree that if this case goes forward and if there has to be consideration of these issues at a subsequent time, either in the new trial on damages or on a subsequent appeal, is there a reason not to entertain whatever questions this panel can entertain now? Well, Your Honor, there may be pragmatic reasons to entertain the burden issue now to clear it up for a new trial, but pragmatism is not the benchmark of 1292B. 1292B has jurisdictional elements that must be met. And one of them is that you do not certify for interlocutory review previous orders that are not, or previous issues that are not fairly included in the certified order. So- You do give us material to the issues in the certified order, so I think that then that's related to the point that Judge Lipton was talking about if we determine that the interpretation of need is central to the jury instructions on who's got the burden of disaggregation when it comes to damages, then I think under Canella and Cinematronics, that materiality would make it sufficient for purposes of certification. Now, we still have the discretion not to hear an interlocutory appeal, but whether hearing it is the most efficient way to go is something that I think the panel's entitled to consider once that test is met. So let me ask you a question related to that issue. When it comes to damages in this case, the district court did in instruction number, I think during instruction number 25, it did place the burden on the employer to show that the secondary activity was a substantial factor in causing the employer damages. So the burden was correctly placed there. I think where Mr. Jackson and Union would say the district court might've gone awry was really the next step, which is instruction number 30, I think it's 31, that just talks about the disaggregation component of it and the divisibility question of it. So is it your view that any error that may have occurred in those instructions would go only towards damages question and not liability? Yes, it would not go to liability, Your Honor. The disaggregation merely goes to damages, as you pointed out in one of your earlier questions. There was abundant evidence as to liability in this case, which goes to the ILWU's actions and the motivations for this action. The court should remember that for the period between May of 2012 and August, 2013, there were preclusive findings that the ILWU engaged in unlawful secondary actions for that 15 month period, and that those actions were unlawful and they did cause harm. And so the only issue really raised on appeal has to do with the ILWU's attacks on the findings of the jury with regards to liability and causation after August, 2013. I'd like to get to the issue about the second issue. I believe that is also outside this court's jurisdiction, Your Honor, because that's simply a factual issue. The ILWU's legal issue about entanglement is really nothing more than an attack on the jury's factual finding that the ILWU's coercive actions directed against ICTSI in the period after August, 2013 were substantially motivated by the ILWU's object to obtain on a permanent basis the reefer work. And counsel's argument concerning that issue really just ignores the fact that the jury had a lot to consider in terms of what the motive of the ILWU was in engaging in these slowdowns, safety gimmicks, work stoppages, et cetera. And the ILWU can't just say that, oh, no reasonable jury could find that the motive was primary here. There was abundant evidence that the district court detailed at pages ER 42 through 47, 16 separate bits of evidence that the district court identified as bearing upon the ILWU's secondary motivation. And it's not sufficient for the ILWU to just say, well, their members were telling the ICTSI officials that they were engaged in primary conduct or that they were engaged in section seven. There were preclusive facts in this case that the ILWU engaged in pretextual statements and complaints, taking equipment out of service where there were no problems with the equipment, basically lying about their motive. That was a preclusive fact for the first 15 months here. And so the idea that the jury was just required to accept the ILWU's excuses after August 13th, 2013 is just a non-starter. There was abundant evidence upon which the jury could conclude based upon the facts that Judge Simon set forth in his opinion that there was still a secondary object here. I don't believe there is any legal question germane to that issue. Entanglement in the vortex is a phrase lifted from the Supreme Court's decision in Woodworkers. And it refers to a legal doctrine of the ally defense, which is a defense that is not at issue in this case. So all they've done is pluck a phrase out of a Supreme Court case and allege that it has some legal significance in this case when it really doesn't. The evidence was really overwhelming that there was a secondary motive. In addition, this is not a case of proximate cause that is at all governed by the city of Oakland case that this court recently decided on Bonk. In that case, there was this very convoluted long and winding causal chain that the court was dealing with. Here, the activities of the ILWU were directed against ICTSI's operations. They were directed point blank at their operations. There isn't any long and winding path here. The ILWU, in order to obtain on a permanent basis the reefer work, continued to make good on its threat to drive ICTSI out of business and to engage in slowdowns, work stoppages, safety gimmicks, et cetera, which ultimately led to ICTSI being driven out of business. And so I think their second issue, number one, it's not a type of issue that is susceptible to 1292B jurisdiction because it does not pose a controlling question of law. But secondarily, it's completely meritless as the district court pointed out. It's an opinion because there is certainly evidence here that supports the jury's findings. And that's true about all of the jury's findings in this case. And the court should not forget that this attack is on a order denying judgment as a matter of law. And ICTSI is entitled to the benefit of all reasonable inferences in its favor. The ILWU completely glosses over the posture of this case and makes arguments about the facts that the jury rejected and had legitimate basis to reject, as pointed out by the district court. I would like to talk a little bit more though about the burden issue and the jury instruction. As I stated earlier, the jury instruction is not part of the order. And I don't believe that the burden instruction was material to the certified order because it really doesn't matter whose burden of proof it is. Just like if you're in a motor vehicle accident case and there's a dispute as to who ran the red light, whether the defendant ran the red light, it doesn't really matter whose burden of proof it is. If the judge were to misassign the burden of proof, as long as there's conflicting evidence, admissible evidence as to who ran the light, then the JMLL motion can be decided based upon the existence of that evidence. So I don't think the burden of proof is material here. And I don't think the district court's post hoc explanation as to why it's material really holds water. He never really says why it's material. He just concludes that it is. And that type of conclusion should not be sufficient for this court to take jurisdiction. But I would like to talk a little bit about the burden issue on the merits in my remaining time. The ILWU's premise that the jury was authorized by the jury instructions to award damages that were not caused by the ILWU's unlawful conduct is simply false. As Judge Wynn pointed out, the instructions in this case instructed the jury for all periods of time at issue in this case that the ILWU, excuse me, that ICTSI had the burden of proving that ILWU's unlawful secondary activity was a substantial factor in causing ICTSI's damages. That's instruction 25 at ER 110. The district court also correctly instructed the jury that ICTSI bore the burden of proof to establish its damages, to establish the amount of its damages. And that's instruction number 30. The verdict form itself asks, the special interrogatory asks the jury to determine the amount of ICTSI's damages for which the union's unlawful labor practices were a substantial factor. So the instructions in this case simply did not permit the jury to award damages not caused by the ILWU's illegal conduct, and the jury did not do so. Instead, the district court's instructions on the burden come directly from this court's decision in Mead, which controls the outcome of this case. The ILWU's claim that Mead somehow requires ICTSI to disprove other alleged causes of damages is baseless. And in fact, I don't believe that ILWU cites one case where a court, either in the tort context or in the antitrust context, says that a plaintiff who proves substantial factor causation must, as part of that burden, negate other causes. And that authority doesn't exist. Now, your honors, in Mead, the union in that case, just like the union here, advanced numerous allegations that the employer had other causes, or the employer's losses, excuse me, had other causes, including market conditions and the employer's alleged mismanagement of the business. But this court in Mead held that the plaintiff was entitled to all of its damages if the union's conduct was a substantial factor causing the union's injury, quote, notwithstanding other factors contributed also, close quote. I don't know that Mead quite answers your question, counsel, because there, the court rejected the employer's, rejected the argument that the employer's proof was insufficient, but it didn't reject the union's premise that the burden still fell upon the employer to disprove lawful causes as a source of the loss. So I'm not sure Mead stands for the proposition that the union carries the burden when it comes to disaggregation. In light of the other instruction in this case, I'm not sure it makes a difference on the damages question, but I don't read Mead in the same way that you do. Well, your honor, I don't think, I mean, obviously the burden of proof to prove substantial causation is on the plaintiff. We've never shirked from that proof in this case. We bore that burden of proof in front of this jury. But in Mead, if the mere allegations of other causes that were posited in that case would have caused the plaintiff employer to have to disprove them or disprove their impact, then the court would have had a different holding. So I don't think you can square the court's decision in Mead with the ILWU's argument that somehow it was incumbent on ICTSI to disprove other causes of its damage. I think that under tort law, under the restatement is squarely on the defendant to prove. And I think, again, under the restatement, as Judge Simon ruled, the burden of divisibility is on the defendant. And in this case, the ILWU had every opportunity to prove that there were other causes of ICTSI's damages. And they had every opportunity to prove to the jury that there was some mode of dividing those damages by cause. And they really made very little or no attempt to do so. And the jury didn't accept their argument that there were other causes. And so as far as the divisibility instruction itself, we contend in our brief that that really is harmless error because the jury found that there were no other causes of ICTSI's damages. And because there were no other causes of ICTSI's damages, there was nothing to divide. And so the jury never answered that question on the special verdict form. And therefore the failure or the giving of that instruction, which was in our mind and in Judge Simon's mind an accurate instruction did not cause any prejudicial harm to the ILWU. So if we counsel- So just counsel, make a clear argument that- Counsel? Oh, I'm sorry, Judge O'Scanlan. Okay, quick question. Assuming we, just for the moment, assuming we would disagree with you with respect to the media issue and assert jurisdiction, do we have jurisdiction to hear all of the other questions? If they are posed by the certified order, then I think- Well, in this case, as you look at the certified order. Well, yes, Your Honor. I think the other issues posed by the case are within the four corners of the certified order, including our cross-appeal, Your Honor, which I have not had an opportunity to talk about, but which I would fall back on our briefing with regards to the judge's remitter in this case, which was not to the maximum amount of sustainable by the proof. But yes, I would say, Your Honor, though, the court has discretion not to take the second issue because it doesn't, in and of itself, meet the standards for a jurisdiction under 1292B, but it at least is included in the certified order. So I guess I'd like to kind of catch that a little differently. I would say the second issue doesn't meet the statutory standards, so I don't believe you should take jurisdiction over it, even if you take jurisdiction over the first. But- Thank you. Thank you, Your Honor. To answer my question, which is, given your argument that interlocutory appeal is not appropriate in this case, I want to make sure I understand your position as to where the case should be. Back to the district court for re-trial on damages, then. That's where you'll be placed. That's correct, Your Honor. And I think that even if you were to decide the burden issue differently than we're asserting in this case, we're back to the district court on damages as well. I don't think there's any basis for a JMOL in this case because there was sufficient evidence on every element of ICTSI's claim. So I don't see how the ILWU can legitimately claim that flipping the burden of proof causes a judgment as a matter of law against ICTSI. Right. Thank you. Thank you, Your Honors. I promise you, Mr. Jackson, I'd give you a few minutes for rebuttal. Thank you, Your Honor. The instructions about proximate causation, I think, are a special concern because of the tight interplay, the interwoven nature of proximate causation as both a question for liability and for damages. And I would point the court to the Hasbrook case from this circuit, which is 663, half-second, 930, which holds that under section four of the Clayton Act, which is the model for section 303 of the Taft-Hartley, the overlap between proof of injury for liability purposes and for damage calculation purposes is such that the issues aren't fairly separable. I would also point the court on page 30 of our second brief to the Wheeling and Blackerby cases from the Eighth Circuit, talking about misallocation of burdens has heightened importance and can easily affect the jury's ultimate verdict. And on the page immediately before that, and to some extent what we're talking about is prejudice, and in the Caballero case, this court held that with regard to that issue, with regard to prejudice, ICTSI is not entitled to have disputed factual questions resolved in its favor. I'd like to briefly address the facts. Excuse me, counsel. I've been looking for the Hasbrook case and I don't seem to find it. Was it cited in any of your briefs? It was cited, no, because it was part of the briefing on 1292B to the district court, but since the district court agreed with us and certified the appeal and then permission to appeal was granted, we did not bring it up, but it quite clearly- It wasn't in your briefs to this court. That's correct. Right, thank you. That's correct. And regarding the facts, pages 43 to 44 of the record that the counsel mentioned, the district court summarized those facts as follows. From this evidence, a jury reasonably could find that the reefer work remained an important issue for LWU after August 13, 2013, but that's not the standard. The reefer dispute remains important for PMA too, in the sense that it's upset about ICTSI undermining the collective bargaining agreement. What's important to both ILWU and PMA is the stability of their collective bargaining agreement and relationship. And there's nothing wrong with thinking that's important. That's the avowed purpose of the NLRA. Finally, I would- Well, wait a minute, but if the reefer work is controlled by the Port of Portland, not by ICTSI, how does that change the conclusion that the action taken against the terminal operator was action taken against a secondary employer? I mean, reefer work may have been important. I'll concede that. Nobody disputes that. The problem was that it was found that that was controlled by the port, not by the terminal operator. So I hear what you're saying, but I don't see what difference it makes. Well, because the district court changed the standard into not whether there was a coercive activity designed to put pressure on ICTSI to get the port to assign those jobs, but just on whether people mentioned the reefer work or whether it came up in the context of ongoing litigation, where that was kind of how things started. And of course the term came up, but there was no evidence that it was the reason for actions taken. And Mr. Roby's testimony quite clearly admits that it was not. Nobody mentioned it. They were protesting ICTSI's own policies of firing entire gangs of workers, of switching from four on four off, all kinds of employment policies that were ICTSI's policies. And that is primary labor dispute. Thank you, counsel. We've taken you over time again. A few very helpful arguments in this case today. Let me see if my colleagues have any additional questions before we take the matter under submission. No further questions. All right. And that concludes our argument today. Thank you, counsel. The matter is taken under submission. Thank you, your honors. We're adjourned for the day. Court for this session stands adjourned.
judges: O'SCANNLAIN, CLIFTON, NGUYEN